**HIGGINS, INC., Appellant,**

v.

**TEX–O–KAN FLOUR MILLS CO., doing business as Morten Milling Company, Appellee.**

**TEX–O–KAN FLOUR MILLS CO., doing business as Morten Milling Company, Appellant,**

v.

**HIGGINS, INC., Appellee.**

**No. 17877.**

United States Court of Appeals
Fifth Circuit.

Jan. 20, 1960.

Rehearing Denied March 23, 1960.

Cameron, Circuit Judge, dissented.

Richard B. Montgomery, Jr., John W. Read, New Orleans, La., for appellant.

James J. Morrison, New Orleans, La., Otto & Easterday, New York City, of counsel, for appellee.

Before RIVES, Chief Judge, and HUTCHESON and CAMERON, Circuit Judges.

HUTCHESON, Circuit Judge.

This is an appeal from a decree in favor of appellee for damages sustained by it as shipper when a cargo of flour laden aboard the M/V Trader Horn, (owner Mick Trader Lines), at New Orleans, was outturned damaged at the port of Bluefields, Nicaragua.

By its specifications of error,[1] the appellant does not question here the quan-

---

1. (1) The Court erred in finding that appellant's agent had actual authority to substitute Mick Trader Line and the M/V Trader Horn for the M/V Angele Higgins.

tum of damages or that the damage was caused by the unseaworthiness of the carrying vessel or other fault of the carrier. Its attack upon the decree is based on the claims: (1) that, not being the owner of the vessel and not having issued the bill of lading under which the cargo was carried, it was not, it could not be, held responsible as the carrier for the vessel and the carriage; and (2) that libelant did not establish any right in its own behalf, or in behalf of the consignee and/or its carrier, to stand as plaintiff in judgment.

(2) The Court erred in finding that the substitution of the M/V Trader Horn and Mick Trader Line for the M/V Angele Higgins was incidental to and expressly contemplated by the contract of affreightment, thereby rendering appellant liable as carrier.

(3) The Court erred in failing to hold that the Bill of Lading as issued and negotiated was the controlling contract between the real parties at interest.

(4) The Court erred in finding that Abaunza, on behalf of appellee, substituted another line without the knowledge of appellee.

(5) The Court erred in concluding that appellee established any right in its own behalf or in behalf of the consignee and/or its underwriter to stand in judgment in these proceedings.

2. At all material times Higgins, Inc., doing business under the trade name of Las Americas Steamship Line, operated a steamship service between New Orleans, and, among other places, Bluefields, Nicaragua.

Sometime prior to the development of the facts which led to this litigation, Higgins, Inc. appointed Gonzalo Abaunza, Jr. to act as general steamship agent for Las Americas in the Port of New Orleans. During the period between Abaunza's appointment and the latter part of Nov., 1946, appellee, through its broker in New Orleans, A. E. Hegewisch, shipped a number of consignments via appellant carrier.

On Nov. 27, 1946, appellee, through Hegewisch, entered into the written contract of affreightment, Shipping Contract No. 113, out of which this litigation arises. Under its terms, it was agreed that appellant would transport 139 tons of flour from the Port of New Orleans to Bluefields, Nicaragua aboard the M/V Angele Higgins, which had a scheduled

The district judge made detailed findings of fact and conclusions of law, with which, upon a consideration of the record, we find ourselves in substantial agreement, and, because they are reported in Tex-O-Kan Mills v. Higgins, Inc., D.C., 174 F.Supp. 198, we incorporate them herein by reference. To point up our discussion of the issues the appeal presents, however, we set out in the margin a summary of the material facts,[2] and will from time to time make such reference to, and use of, the findings themselves as found necessary.

sailing date of Dec. 21, 1946. The contract, among other things, provided that it was subject to all of the clauses and conditions in the Ocean Bill of Lading issued by the vessel, and it incorporated the Bill of Lading by reference.

Las Americas Shipping Contract No. 113 expressly provides as follows, with respect to libelant's cargo of flour:

"To be delivered to suit steamer M/V Angele Higgins. * * *

"This contract is made upon the express condition that it is subject to all the clauses and conditions in the Ocean Bill of Lading used by the vessel, which Bill of Lading is made a part of this contract. * * *"

The Ocean Bill of Lading referred to by Las Americas Shipping Contract No. 113, and incorporated into the contract by the terms thereof, expressly provides that the cargo contracted for will be:

"Received * * * by the Las Americas Steamship Line (the term Carrier hereinafter used intending said Company and * * * any substituted Carrier) * * * To Be Transported by the steamship named * * * subject to substitution * * * or any substituted * * * vessel * * * at the inception of the entire service) to the destination of the goods, subject always * * to the Terms Of This Contract Which Are Hereby Mutually Agreed Upon As Follows:

" '9. The carrier shall have liberty, in its discretion before * * * shipment or loading, to substitute, or ship the whole or any part of the goods, by any other steamship * * * subject * * * to the provisions of the actual form of bill of lading of such carrier.' "

Shortly after entering into the contract of affreightment with appellee, Abaunza learned that the M/V Angele Higgins would not be available to meet the sched-

■ Appellant's attack upon the findings and conclusions, and the judgment based thereon, are sweeping and sustained. It begins with a challenge of the findings and conclusions as not entitled to full weight because prepared by appellant's proctors and accepted by the district judge without change, a challenge which we have twice rejected in principle, expressly in O/Y Finlay-

uled sailing date. In order to meet appellee's pressing time requirements, Abaunza made arrangements for appellee's consignment of flour to be carried aboard the M/V Trader Horn, a vessel owned and operated by Mick Trader Lines, another line for which Abaunza acted as agent in the Port of New Orleans.

On or about Dec. 5 or 6, 1946, Abaunza notified Hegewisch, appellee's broker, of the intended change of vessels, and the broker in turn advised appellee. Neither libelant nor its freight forwarder in New Orleans knew the ship offered for substitution, and, on making inquiry of Abaunza about it for insurance purposes, were advised that she was a vessel newly converted for cargo purposes and just being put in trade.

After a fairly voluminous exchange of correspondence, telegrams, and telephone calls between Abaunza, Hegewisch, appellee and the underwriters, concerned principally with the effect which the change of vessels might have on the insurance rate for the carriage, appellee specifically approved the substitution of the M/V Trader Horn for the M/V Angele Higgins, and it was confirmed by a letter from Las Americas Steamship Lines, dated Dec. 6, 1946:

"This is to confirm that our booking contract No. 113 for 139 long tons flour (3100 sacks 100 lbs each) originally booked for the M/V Angele Higgins, which is now not due to sail from New Orleans until about December 28, for Bluefields, via Cuba, has been transferred to the M/V Trader Horn which is expected to sail from New Orleans about December 20th, directly for Bluefields.

"We also wish to confirm that the owners of the M/V Trader Horn are agreeable, without setting a precedent, to absorbing the difference in marine insurance premium for whatever the rate might be on the Trader Horn over what the premium would have been had it been shipped on the Angele Higgins."

Las Americas, in its Answer No. 6 to interrogatories propounded to it admitted:

" * * * that the letter dated Dec. 6, 1946, annexed to the libel * * * as Exhibit B, constitutes, and is evidence of, an agreement * * * between Higgins, Inc. d/b/a Las Americas Steam-

ship Line, represented by its duly authorized agent, Gonzalo Abaunza, Jr. * * * and Tex-O-Kan Flour Mills Co., to substitute the M/V Trader Horn. * * * "

Las Americas further admitted in its answers Nos. 6 and 7 to interrogatories:

" * * * that it failed to disclose to libelant the name of the owner and operator of the M/V Trader Horn."

A series of seven bills of lading were prepared in Hegewisch's office on Las Americas' bill of lading forms to cover the consignment of flour. The bills of ladings, showing on their faces that they were issued in accordance with the Las Americas Contract No. 113, which covered the carriage, were issued by Mick Trader Line through Abaunza. Both Abaunza and Hegewisch denied that the bills were prepared by them, and each claimed that the bills as issued were prepared by the other. Evidence offered by both parties to corroborate the positions of Abaunza and Hegewisch on this point is, however, sufficient to support the findings in favor of libelant.

It is clear from the record that the Mick Trader Line bills of lading, under which this consignment moved, were received by appellee through its agent on Dec. 27, 1946, and he forwarded them to appellee in the usual course of business.

No correspondence was exchanged between Hegewisch and Abaunza or Hegewisch and appellee with reference to the change of steamship lines, and the evidence is sufficient to support the district court's findings of fact and conclusions of law, that, in accepting the Mick Trader Lines bills of lading, libelant.

"(a) considered same as issued in conformity with shipping contract No. 113;

"(b) did not release or intend to release respondent from its said shipping contract No. 113;

"(c) Did not substitute, nor intend to substitute Mick Trader Line for respondent as carrier of its cargo; and

"(d) the substitution of the M/V Trader Horn for the M/V Angele Higgins and the issuance of, and acceptance by, libelant of Mick Trader Line bills of lading did not novate respondent's shipping contract No. 113."

When appellee received the bills of lading, it attached sight drafts to them and forwarded them to the consignee for

son-Forssa A/B v. Pan Atlantic Steamship Corp., 5 Cir., 259 F.2d 11, at page 18, and tacitly in Mississippi Shipping Co. v. Zander, 5 Cir., 270 F.2d 345.

It continues with a basic attack upon the findings of fact and of law: (1) that Abaunza, appellant's agent, had actual authority to substitute Mick Trader Line and the M/V Trader Horn for the Angele Higgins and the Higgins Line; (2) that the substitution was in the contemplation of, and pursuant to, the contract of affeightment; (3) that the bill of lading under which the flour was carried, and not the shipping contract, was the controlling contract between the real parties in interest; and (4) that Abaunza, on behalf of appellant, substituted a new line without the knowledge of appellee.

It concluded with an attack upon the action of the court in concluding that appellee established any right in its own behalf or on behalf of the consignee, and/or its underwriters to bring the action and stand in judgment in it.

Emphasizing and reemphasizing the unusual feature, indeed the anomaly, of this case, that the shipper, under a bill of lading, is seeking to hold liable for the mishandling of the shipment, not the carrier named as issuer of the bill of lading, but another, appellant bears down hard on its claims that the court excluded evidence tendered by respondent to show that Abaunza did not have actual authority to do what the court found he had done. In support of its attack upon the finding that the substitution which took place in this case was contemplated by, and pursuant to, the contract of affreightment, appellant points out: that no mention of substitution was made in the contract; and that the only way this comes into the case is through the fact that Clause 9 of the Ocean Bill of Lading, to the conditions and clauses in which the contract was made subject, contained a provision for substitution, argues that this clause was never intended to support or allow the complete substitution of another line and its vessel, while retaining to the first line only the onerous provision of the contract, the responsibility for safe carriage.

Akin to this argument is that made in support of Specification 3, that the real, the controlling contract was the bill of lading issued by the Mick Trader Line and its effect was to extinguish the liability of Higgins under the shipping contract by the substitution of a new contract. It cites in support of this contention, the Queensmore, D.C., 51 F. 250; Strachan Shipping Co. v. Alexander Eccles, 5 Cir., 25 F.2d 361, and Luckenbach S. S. Co. v. American Mills, 5 Cir., 24 F.2d 704, 705, where, under facts in no sense analogous to those here, the courts have said: that a livestock freight contract is the preliminary agreement and the bill of lading is a special contract with a particular ship, binding the ship and its owner; that a dock receipt was merely preliminary to a bill of lading and did not purport to be a contract of carriage; and The Capitaine Faure, 5 Cir., 10 F.2d 950, 954, where it was said: "Bills of lading are commercial documents upon which the shippers and their indorsees are entitled to rely".

Arguing that in no proper legal sense could contract No. 113 be considered controlling here, it insists that the court should have dismissed appellee's libel against it since appellant was not a party to the bill of lading, the real contract

---

payment. The sight drafts were honored, appellee was paid by the underwriter under loan receipts and in addition it took subrogation from the ultimate consignees in Bluefields.

Tex-O-Kan is, therefore, appearing in these proceedings: as the shipper whose cargo was damaged and who is obligated to its underwriters by virtue of having been paid its loss under loan receipts; and as subrogee of the ultimate consignees who took the documents up only after the receipt of insurance funds covering their loss of the market value of the goods. Article XI of the libel specifically alleges:

"This libel is brought on behalf of the libelant named in this cause of action, and on behalf of and for the interest of all parties who may be or become interested in the shipments herein referred to, as their interests may ultimately appear."

which covered the rights and obligations of the parties.

In support of its specification, that it was error for the court to find that respondent substituted another line without appellee's knowledge or consent, appellant insists that, while this contention that appellee had acted in good faith, had plainly and strongly influenced the district judge, the evidence showing that appellee, in preparing assignments authorizing it to prosecute this action, first prepared them to state specifically that the claim was against the Mick Trader Line and the M/V Trader Horn, completely refutes the claim of good faith.

Finally, planting itself firmly upon its specification No. 5, that libelant had no sufficient interest in the action to permit it to maintain it, appellant, urging that in admiralty, as in law, the action must be brought by the real party in interest, and pointing to the fact that it is conceded that libelant has been paid its loss, insists that none of the documents on which it relies give it right or title to sue.

Appellee meets all these contentions frontally with the positive overall contentions that the trial court's findings and conclusions were carefully considered and are fully supported by the record, and that the evidence of Abaunza's actual authority is conclusively established by the answers made by Higgins to interrogatories Nos. 6 and 7:

> " * * * that the letter dated Dec. 6, 1946, annexed to the libel * * * as Exhibit "B" (i. e. the letter substituting the M/V Trader Horn for the Angele Higgins) constitutes, and is evidence of, an agreement * * * between Higgins, Inc., d/b/a Las Americas Steamship Line, represented by its duly authorized agent, Gonzalo Abaunza, Jr. * * * and Tex-O-Kan Flour Mills Co., to substitute the M/V Trader Horn as the carrier to transport the shipment of flour originally booked for the M/V Angele Higgins."

> "Higgins, Inc. states that throughout the negotiations with Tex-O-Kan Flour Mills Co., it was represented by its agent, Gonzalo Abaunze, Jr. * * *."

These were made for the purpose of establishing its defense of novation, a defense which the district court rejected not because of lack of authority of Abaunza to bind Higgins but because of the lack of knowledge of libelant that a novation was sought or intended and a lack of agreement on its part to a novation.

Meeting appellant's contention that appellee relied below, and relies here, on apparent, rather than actual, authority, appellant, pointing to the affreightment contract and the Las Americas bill of lading and to the letter of Abaunza, agent for Las Americas Steamship Line, confirming that "our booking contract No. 113, originally booked for the M/V Angele Higgins for Bluefields, has been transferred to the M/V Trader Horn," argues that the evidence is overwhelming that the matter occurred just as the district judge found that it did, and that the findings fully conform to the truth and right of the case.

In reply to appellant's contention that the Trader Horn's bill of lading, and not the affreightment contract, was the controlling contract, appellee cites and quotes from Carver, "Carriage of Goods by Sea", 10 Ed. (1957) at page 42:

> "When a special contract is made with the carrier, its terms must be looked at, and if it appears that the shipper himself was the contracting party, he is the person able to sue and liable on the contract, although he may have been acting for the benefit of another and may have no interest in the goods."

Arguing that all parties understood the Shipping Contract No. 113 to be, and it was, the controlling contract: that the consignee of all the bills of lading was Tex-O-Kan; and that this suit is brought on behalf of Tex-O-Kan, under the loan receipt; appellee insists: that there

was never any defense in the case at any time except the defense of novation; and that, that defense having been vigorously tried out for two days with the court finding that novation was not established and dismissing the defense, the only defense to the suit failed.

Pointing to the specific finding and conclusion of the court, that the substitution of the M/V Trader Horn for the M/V Angele Higgins and the issuance, and the acceptance by libelant, of Mick Trader Line bills of lading, did not under the evidence novate respondent's shipping contract No. 113, appellee, arguing vigorously that, under the facts in this case, it was clearly entitled to sue appellant, returns to its contention that, where there is a binding contract of affreightment predating the issuance of the bills of lading, such as Shipping Contract No. 113, the law is, as stated in Carver, "Carriage of Goods by Sea" at page 47, as follows:

"When Bill of Lading Does Not Contain the Contract.

"In any event the bill of lading is not always the expression of the contract. That may have been definitely concluded before it was given. In such cases the original contract generally determines the relation between the shipper and the ship owner."

"Affect of Authorities.

"The true view of the authorities may be that it depends on the facts of each case whether the bill of lading contains the actual contract."

It will serve no useful purpose for us to further state or discuss the contentions of the parties. A careful and full consideration of these contentions, in the light of the briefs and record, and of the findings and conclusions of law, convinces us that, though the situation presented by the facts is an unusual one and no precise case in point has been cited to, or found by, us, the case was fully tried on correct legal theories, and the findings of fact and the conclusions of law find full support in the record.

Of the appellee's complaint of the judgment that, in allowing interest on the judgment only from date of decree, the district judge erred, we think it sufficient to say that it was in the discretion of the district court and of this court to deny interest and that, under the facts of this case, the discretion to deny it from date of judicial demand was properly exercised.

The judgment should be, and it is, affirmed.

CAMERON, Circuit Judge, dissents.

Rehearing denied; CAMERON, Circuit Judge, dissenting.